IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE MODEL A-1586, IMEI # 356146093206317 CURRENTLY STORED AT THE BUREAU OF ALCOHOL, TOBBACO, FIREARMS AND EXPLOSIVES, LOCATED AT 31 HOPKINS PLAZA, BALTIMORE, MARYLAND | Case No. 19-0141 JMC |

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, David Cheplak, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. The ATF and Baltimore Police Department ("BPD") have been investigating a Non-Fatal Shooting that occurred in a school zone on November 14, 2018 that is linked via ballistic evidence to a Non-Fatal Shooting that occurred during the armed robbery of a business on December 5, 2018. Cornell SLATER is one of two subjects believed to be involved in the crimes. I submit this affidavit in support of an application for a search and seizure warrant authorizing the search of a cell phone belonging to SLATER, specifically, an **Apple iPhone model A-1586, IMEI # 356146093206317** (hereinafter referred to as the **"Subject Electronic Device"**). The **Subject Electronic Device** is currently stored in a secure manner at the Baltimore Field Division of the ATF located at 31 Hopkins Plaza, Suite 500, Baltimore, Maryland. The applied-for search and seizure warrant would authorize the forensic examination of the **Subject Electronic Device** for the purpose of identifying electronically stored data listed

1

in Attachment A. The Subject Electronic Device will be reviewed pursuant to the protocol described in Attachment B.

2. The Subject Electronic Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same condition as when the **Subject Electronic Device** first came into the possession of the law enforcement. Any search of the Subject Electronic Device will occur in an office or laboratory setting on premises controlled by ATF or their authorized representatives.

3. The information set forth in this affidavit derives from my personal knowledge and observations, discussions with other ATF agents and employees, other law enforcement officers, and witnesses, and my review of police reports and public records. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated. Because I submit this affidavit for the limited purpose of establishing probable cause for a search warrant, I have not included every fact known to me concerning this investigation. Rather, I set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

4. As set forth below, probable cause exists to believe that the **Subject Electronic Device** contains evidence, fruits, and instrumentalities of crimes against the United States, occurring in the District of Maryland, including violations of 18 U.S.C. § 922(g), Felon in Possession of a Firearm; 18 U.S.C. § 922(q)(3)(A), Discharging a Firearm within a School Zone; 18 U.S.C. § 1951, Hobbs Act Robbery; and 18 U.S.C. § 924(c), Use of a Firearm in Furtherance of a Crime of Violence.

2

## AFFIANT BACKGROUND

5.   I have been a Special Agent with ATF since 2007 and I am currently assigned to the ATF Baltimore Field Division, Group IV. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of twenty-six weeks. I received extensive training in the provisions of firearms and narcotics laws administered under Title 18, Title 21 and Title 26 of the United States Code. Prior to joining ATF, I received a bachelor's and master's degree from the University of Florida. I worked for two years as a federal police officer with the Federal Bureau of Investigation Police Unit.

6.   I have previously participated in multiple investigations involving Felon in Possession, Hobbs Act Robbery and acts of violence involving firearms. Accordingly, I have been the affiant on search warrants and made arrests of suspects for these offenses and other violent crimes. I am familiar with federal Hobbs Act Robbery statues and the methods employed by those who perpetrate these acts. I know the location of cell phones used by victims and suspects before, during, and after criminal events is helpful in investigations of the same. Based on my training and experience, I know that individuals involved with violent crime frequently use cellular telephones, communication devices and other electronic media to further their illegal activity. I also know from my training and experience in investigating violent crime that the call histories/stored numbers, and stored text messages of cellular phones often yield evidence that leads to the identification of co-conspirators. In addition, I know based on my training and experience that individuals who commit criminal acts frequently maintain and use numerous electronic devices (especially cellular telephones) in an effort to conceal their activities. Such

3

electronic devices are likely to contain evidence of their communications (by telephone, text message, email, social media, or otherwise) with co-conspirators. Electronic devices kept by individuals who commit criminal acts are also likely to contain the names, addresses, email addresses, and/or telephone numbers of associates and co-conspirators. Further, individuals who commit acts of violence often take or cause to be taken photographs of themselves, their associates, their property and their firearms. These traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person.

7. Furthermore, I know that cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device. In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. For each communication, these records may include the telephone

4

call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message). Based on these factors, I know that cellular telephone towers retain information that allow law enforcement to analyze and compare the cellular telephone numbers of potential suspects to the cellular telephone numbers contained within a cellular telephone tower's records. This comparison can help identify or eliminate suspects.

## PROBABLE CAUSE

8. On November 14, 2018, at approximately 4:37 p.m., BPD officers were dispatched to Sinai Hospital in Baltimore, Maryland in reference to a walk-in shooting victim. At the hospital, officers encountered a 34 year-old female victim (hereinafter referred to as "Victim D.S.") who had been shot in her right shoulder. Victim D.S. told BPD detectives that she had been shot earlier that afternoon in the 2500 Block of Springhill Avenue, Baltimore, Maryland. Victim D.S. explained that she had been following a "candy-apple red" Nissan Altima because she had observed her Maryland temporary registration tag (T719824), which had been stolen from her vehicle on or about October 26, 2018, affixed to the Nissan Altima. Victim D.S. reported that she had seen the same Nissan Altima bearing her stolen temporary registration tag approximately two weeks prior and attempted to follow it on that date as well, but was pulled over by a marked BPD patrol vehicle for a traffic violation prior to her being able to confront the

5

driver.[1] Victim D.S noted that on the day she was shot, she followed the red Nissan Altima until it reached the 2500 Block of Springhill Avenue, where the Nissan Altima came to a stop. Victim D.S then pulled along the driver side of the Nissan Altima, at which time the driver of the Nissan Altima, a black male, exited the driver door. Victim D.S recalled that the driver approached her passenger window, stated "What the fuck you following me for?" and then shot her. Victim D.S added that the suspect was wearing a gray sweatshirt with blue and orange stripes and observed that he had a few gold teeth in his mouth. Victim D.S also observed a second individual in the vehicle, whom she believes was a female. As Victim D.S. exited her vehicle and ran away from the scene, her vehicle, which had been left in drive, rolled down the hill and struck the chain link fence that surrounds the Dr. Martin Luther King, Jr. Elementary School. BPD officers and crime scene technicians subsequently responded to the area described by Victim D.S., where they recovered two 9mm shell casings in the street. Based on the location of the shell casings, it was determined that the shooting incident occurred within 1000 feet of the school property.

9. On December 5, 2018, at approximately 4:49 a.m., BPD officers responded to the Restaurant Depot facility located at 3405 Annapolis Road, Baltimore, Maryland in response to reports of an active shooter. The investigation revealed that two armed suspects tried to rob the business and shot one of the employees (a 48-year old male hereinafter referred to as "Victim

---

[1] Subsequent investigation also revealed that on November 1, 2018, a Baltimore City Automated Red Light Enforcement Program Camera took a picture of a red Nissan Altima bearing Victim D.S.'s stolen temporary registration tag.

6

P.R.") during the attempted robbery.[2] Two 9mm shell casings were recovered from the crime scene. Based on an interview of Victim P.R., who recognized one of the suspects, and interviews of other eye-witness victims of the attempted armed robbery, detectives were able to develop a former employee of the business named Cornell SLATER as the suspect who shot Victim P.R. BPD subsequently obtained an arrest warrant for SLATER for various charges, including Armed Robbery and Attempted Murder.

10. On December 7, 2018, investigators received a "Lead Notification" from the National Integrated Ballistics Information Network (NIBIN). NIBIN creates leads based on ballistic similarities between expended shell casings that have likely been fired from the same firearm. The NIBIN lead indicated that the 9mm shell casings recovered at the scene of the shooting of Victim D.S. in the 2500 Block of Springhill Avenue matched the 9mm shell casings recovered at the scene of the shooting of Victim P.R. at the Restaurant Depot. Investigators later received a NIBIN "Hit Confirmation" from the BPD Firearms Analysis Unit that positively confirmed a ballistic match between the 9mm shell casings recovered from the two shootings.

11. Based on statements from employees at the Restaurant Depot, BPD identified Alexxis Wright (also a former employee of Restaurant Depot) as SLATER's girlfriend. Utilizing various law enforcement databases, BPD investigators developed 528 Realm Ct. E, Odenton, MD as a possible address for Ms. Wright.

---

[2] Restaurant Depot is described on its website as "a members-only wholesale cash and carry foodservice supplier." The company has locations throughout the United States.

7

12. On December 18, 2018, at approximately 12:30 p.m., BPD and Anne Arundel Police Department (AAPD) officers established surveillance at 528 Realm Ct. E, Odenton, Maryland and observed a red Nissan Altima matching the description of the vehicle provided by Victim D.S. parked in front of the residence. Officers observed Maryland temporary registration tag T733547 on the Nissan Altima but recognized that it was not the same as the tag stolen from Victim D.S's vehicle. However, officers queried tag T733547 and learned that it too had been reported as stolen. At approximately 2:30 p.m., officers observed an individual matching SLATER's description exit the residence through the front door and open the rear driver's side passenger door of the red Nissan Altima. He was observed leaning into the rear of vehicle. After a few seconds, he closed the rear passenger door of the vehicle and entered back into 528 Realm Ct E through the front door. Approximately 10 minutes later, the same individual exited the residence through the front door and opened the driver's door in an attempt to enter the red Nissan Altima. At that time, several officers converged on the male subject and he was detained without incident. The subject was subsequently confirmed to be SLATER and he was placed under arrest. During a Search Incident to Arrest of SLATER's person, officers recovered a silver **Apple iPhone model A-1586** (the **Subject Electronic Device**), a set of house keys, and the keys to the red Nissan Altima. A query of the Nissan Altima's Vehicle Identification Number (VIN) revealed that the vehicle is registered to SLATER but does not have an active license tag.

13. A review of SLATER's criminal history revealed that he is prohibited from possessing a firearm and/or ammunition and has been convicted of the following offenses:

   a) January 2006 - Baltimore City Circuit Court case # 204302029; Controlled Dangerous Substance (CDS) Manufacture/Distribute/Dispense; sentenced to 6 years

8

b) January 2006 - Baltimore City Circuit Court case # 204364048; CDS Manufacture/Distribute/Dispense; sentenced to 6 years

c) June 2006 - Baltimore City Circuit Court case # 204302030; CDS Possession With Intent to Distribute (PWID); sentenced to 8 years

d) April 2008 - US District Court for Maryland case # CCB-07-0320; PWID Cocaine; sentenced to 8 ¾ years

e) April 2013 - Baltimore City Circuit Court case # 113038021; Firearm Possession With Felony Conviction; sentenced to 5 years

f) July 2013 - US District Court for Maryland case # CCB-07-0320; Violation of Probation / Possession of a Handgun With a Felony Conviction; sentenced to 2 years

## CONCLUSION

14. Based on the information set forth in this affidavit, I believe that probable cause exists that in the **Subject Electronic Device**, there is evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. § 922(g), Felon in Possession; 922(q)(3)(A), Discharging a Firearm within a School Zone; 18 U.S.C. § 1951, Hobbs Act Robbery; and 18 U.S.C. § 924(c), Use of a Firearm in Furtherance of a Crime of Violence. I respectfully request that this Court issue a search warrant for the **Subject Electronic Device**, an **Apple iPhone model A-1586, IMEI # 356146093206317**, and authorize the search and the seizure of the items described in Attachments A, according to the protocols set forth in Attachment B.

15. To the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion

9

onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

_____
Special Agent David Cheplak
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this 11 day of January 2019.

_____
Hon. J. Mark Coulson
U.S. Magistrate Judge, District of Maryland

FILED ___ ENTERED
LOGGED ___ RECEIVED

JAN 28 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY